UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CYNTHIA M. HERNDON | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:15 CV 169 |
| | ) |
| HOUSING AUTHORITY OF SOUTH BEND, | ) |
| and JOANNE WATFORD, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Cynthia Herndon, who is *pro se*, has filed a complaint against defendants Joanne Watford and the Housing Authority of South Bend, Indiana ("HASB"). (DE # 1.) Herndon is a public housing tenant who lived in property owned and operated by HASB. She alleges that she suffered housing discrimination based upon her race, disability, veteran status, and familial status as an "aggrieved mother with custody issues." (*Id.* at 2-3.) She further alleges retaliation against her for having filed a race discrimination complaint with the South Bend Human Rights Commission. (*Id.* at 2.) Lastly, she alleges that HASB's 30-day notice of lease termination was unlawful in that she was entitled to a 90-day notice period. (DE # 1-1 at 6.)

Herndon brings these claims pursuant to 42 U.S.C. § 1983 asserting discrimination and retaliation in violation of the Equal Protection Clause of the United States Constitution; the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* ("FHA"); the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.* ("ADA"); the United States

Housing Act 42 U.S.C. § 1437, *et seq.* ("USHA"); and Executive Orders 11063, 12892 and 13217.

HASB and Watford have moved to dismiss the claims according to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. (DE # 16.) For the reasons set forth below, the motion is granted.

I.      BACKGROUND

This case appears to have been set in motion by a contentious encounter that took place on December 30, 2014.[1] (DE # 1-1 at 5.) Herndon alleges that, on that date, her property manager, Joanne Watford, committed "malicious racial intimidations" and "coercion on matters of child custody." (*Id.*) Shortly after this incident, Herndon filed a race discrimination complaint with the South Bend Human Rights Commission ("HRC") on January 6, 2015. (*Id.* at 11.) In the HRC complaint, she alleged that the property manager, defendant Watford, threatened and harassed her because of her race. (*Id.* at 13.) Specifically she alleged that the source of the racial animus stemmed from the fact that Herndon is white and her male partner is African-American. (*Id.*) Watford is also African-American (*Id.* at 5.) Race is the only basis of discrimination that is included in the HRC complaint. (*Id.* at 13.)

Herndon alleges that on that same day, HASB conducted a "racially motivated" inspection of her unit which nonetheless resulted in a "good evaluation." (*Id.* at 5.) This was allegedly followed by another inspection on January 28, 2015, for which "no

---

[1] Herndon's complaint lists the date of this event as "12-30-15" but this appears to be a typographical error.

evaluation was provided until now." (*Id.*) Around this time she also alleges "intentional failure to provide repair services" after she filed the Commission complaint "despite some repairs done soon after." (*Id.*)

HASB wrote to Herndon on February 9, 2015, and offered an apology to the extent that Herndon was offended during her interaction with Watford in December of 2014. (*Id.* at 21.) HASB's letter indicated that the purpose of Watford's questioning was to ascertain whether Herndon's son still resided in the household and that such information was needed in order to determine whether Herndon should be placed in a one-bedroom or two-bedroom unit. (*Id.*) On February 18th, 2015, the Commission issued a finding of no probable cause as to Herndon's race discrimination complaint. (*Id.* at 25-26.)

In March, HASB initiated the lease recertification process, which Herndon alleges was done "in pretext of race" and "to retaliate on grounds of child custody issues." (*Id.* at 4.) A recertification appointment was scheduled for March 18, 2015. (*Id.* at 24.) Herndon requested to reschedule because it conflicted with a custody hearing for her son on the same day. (*Id.* at 24.) Defendants agreed to reschedule the appointment to March 24, 2015. (*Id.* at 27.) However, it appears that Herndon did not attend the appointment. The next day, March 25, 2015 HASB issued a 30-day notice to terminate her lease effective April 25, 2015. (*Id.* at 5; DE # 17-1.)[2] The notice cited her failure to

---

[2] In her complaint, Herndon states "a notice of lease was issued on 3-25-15 ex#4." (DE # 1-1 at 5.) However, the exhibit she cites to is not the 30-day notice of lease termination but is her own letter requesting to reschedule the recertification meeting on

complete the appointment and provide the required documentation. (DE # 17-1.) In early April Herndon received notice of yet another inspection of her unit scheduled for May 4, 2015. (DE # 1-1 at 5.) Before that happened, and before her lease was effectively terminated, she filed this suit against HASB and Watford on April 17, 2015.

## II. DISCUSSION

Herndon has filed her complaint *pro se.* "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). For this reason, the court will construe Herndon's filings liberally in deciding the present motion.

### A. Subject-Matter Jurisdiction

Defendants have moved to dismiss the case for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Rule 12(b)(1) provides a defendant with a procedural vehicle by which the defendant may move a federal court to dismiss a claim or suit on the ground that the court lacks subject-matter jurisdiction. A Rule 12(b)(1) motion can present either a facial or factual challenge to subject-matter jurisdiction.

---

March 18, 2015 (*Id.* at 24.) Defendants have attached the 30-day notice as an exhibit to their motion to dismiss. (DE # 17-1.) It appears that Herndon intended to attach this 30-day notice to her complaint. Moreover, she specifically mentions it in her complaint and it is central to her claims. Therefore, defendant's exhibit is properly considered part of the pleadings pursuant to Fed. R. Civ. P. 10(c). *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

4

*Villasenor v. Indus. Wire & Cable, Inc.*, 929 F. Supp 310, 312 (7th Cir. 1996). A facial attack is a challenge to the sufficiency of the pleading itself. *Id.* By contrast, a factual attack is not a challenge to the sufficiency of the complaint, but is a challenge to the factual existence of subject matter jurisdiction. *Id.* In either case the "burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (en banc) (overruled on other grounds by *Minn-Chem, Inc. v. Agrum, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc)).

Though defendants never explicitly identify it as such, theirs is a facial challenge to subject-matter jurisdiction. The standard for evaluating a facial challenge to subject-matter jurisdiction is "the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). The well-pleaded factual allegations must plausibly give rise to an entitlement of relief. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). *Pro se* complaints, however inartfully pleaded, "must be construed liberally and held to less stringent standards than those applied to complaints drafted by attorneys." *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992) (citing *Haines v. Kerner*, 404 U.S. 519, 521 (1972)). Furthermore "factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint." *Snyder v. Nolen*, 380 F.3d 279, 300 (7th Cir. 2004) (citing *Gutierrez v. Peters,* 111 F.3d 1364, 1367 n.2 (7th Cir. 1997)); *Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 1992).

Defendants assert that Herndon's complaint fails to allege that she was evicted or otherwise injured by defendants's conduct. (DE # 17 at 10-11.) According to defendants, Herndon had not yet "been evicted or harmed in any way," (*Id.* at 5), and therefore her claims are unripe and she lacks standing to sue.

However, defendants acknowledge in their motion that, shortly after this suit was filed, HASB "did file an immediate possession action against [p]laintiff in the St. Joseph Superior Court." *(Id.* at n. 5.) And, not only did they commence the eviction, but the Superior Court awarded HASB possession of the unit on June 22, 2015.[3] (*Id.*) In Herndon's other filings, she expressly alleges that she was evicted.[4] Bearing in mind the less-stringent standard to which *pro se* complaints are held, Herndon has plausibly alleged an injury-in-fact, and thus, has standing to sue.

Furthermore, to the extent that her claims were not ripe on the day that she filed them, they are undoubtedly ripe at the present time. *See Blanchette v. Conn. Gen. Ins. Corp.,* 419 U.S. 102, 139-40 (1974) ("[S]ince ripeness is peculiarly a question of timing, it is the situation now rather than the situation at the time of the District Court's decision that must govern."); *Public Water Supply Dist. No. 8 of Clay Cty., Mo. v. City of Kearny, Mo.,* 401 F.3d 930, 932 (8th Cir. 2005) ("Whether a case is ripe depends on the state of the

---

[3] After HASB was awarded possession of the unit, Herndon sought to remove the case to the United States District Court. *see, The Housing Authority of South Bend v. Cynthia Herndon,* Case No. 3:15-CV-256-JTM-JEM. The action was ultimately remanded to the St. Joseph Superior Court. *(Id.* at DE # 21.)

[4] *see*, DE # 31 at 2 ("Plaintiff was evicted by South Bend Housing Authority after filing this cause of action solely because of retaliatory Maliciousness [sic] . . . ")

6

case at the time of review, not at the time of filing."); *In re Dairy Farmers of America, Inc.*, 80 F. Supp. 3d 838, 852 (N.D. Ill. 2015). At this point in time there is nothing hypothetical or abstract about this dispute. Defendants's standing and ripeness arguments fail and the Rule 12(b)(1) motion is denied.

## B. Failure to State a Claim

Defendants have also moved to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff. *Johnson v. Rivera,* 272 F.3d 519, 520 (7th Cir. 2001). A "well-pleaded allegation" must provide a "short and plain statement of the claim" showing that the plaintiff merits relief. Fed. R. Civ. Proc. 8(a). The statement must give "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly* , 127 S.Ct. 1955, 1964 (2007) (internal quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. 544). Thus, even accepting all allegations as true, the court need not accept threadbare legal conclusions supported by mere conclusory statements. *Id.*

### I. Discrimination Claims

The main thrust of Herndon's complaint is that she has suffered discrimination on the basis her race, disability, veteran status, and family status as an "aggrieved

mother with custody issues." (DE # 1 at 2-3.) Sections 3603-3606 of the FHA protect against discrimination in housing on the basis of race, color, religion, sex, handicap, familial status or national origin. 42 U.S.C. § 3603-3606. Section 3617 also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

A plaintiff can prove that discrimination occurred by showing that the defendants acted with discriminatory intent or that the action caused a discriminatory effect. *Bloch v. Frischoltz,* 587 F.3d 771, 784 (7th Cir 2009); *E. Miller v. Lake Cty. Highway Dep't,* 421 F.3d 558, 563 (7th Cir. 2005) ("We hold that a showing of discriminatory intent is an essential element of a § 3617 claim."); *Metro. Hous. Dev. Corp. v. Vil. of Arlington Heights,* 558 F.2d 1283, 1290 (7th Cir. 1977) ("at least under some circumstances a violation of section 3604(a) can be established by a showing of discriminatory effect without a showing of discriminatory intent."). However, the application of the *Arlington Heights* "disparate impact" analysis is not appropriate in all contexts, *Knapp v. Eagle Prop. Mgmt. Corp.,* 54 F. 3d 1272, 1280 (7th Cir. 1995), and Herndon has not advanced a theory based on discriminatory effect. Thus, the court must consider whether Herndon has sufficiently alleged that defendants acted with discriminatory intent.

Herndon's filings are rich with conclusory allegations of defendants's discriminatory actions.[5] However she fails to plead any facts that lead the court to conclude that defendants intentionally discriminated on the basis any protected characteristic. The entirety of her allegation of racial discrimination is that she is white, her partner is black and defendant Watford is black. Beyond this, she offers no factual basis to suggest racial animus. Likewise as to her family status, she states that she is an aggrieved single mother of two and alludes to custody issues, but otherwise offers no facts to suggest that this was a source of discriminatory animus. *cf. White v. U.S. Dep't of Hous. & Dev.*, 475 F.3d 898, 907 (7th Cir. 2007) (Landlord's statements indicated a preference based upon family status and supported a claim of discrimination). She asserts that she is disabled and a veteran, but offers nothing else.

Herndon identifies a number of characteristics that are protected under the FHA and establishes that she faced eviction. But crucially, she fails to allege any causal link between the two in the form of defendants's discriminatory motive. None of her allegations plausibly support the claim that defendants acted with discriminatory intent on any of these characteristics. As such, she has failed to allege discrimination under the FHA.

To the extent that she brings her discrimination claims under the equal protection clause of the 14th amendment, they are still hampered by the same defect. To

---

[5] *see* DE # 1-1 at 3 ("defendant SBHA has [p]articpated in in [sic] intentional and malicious practices of racial discrimination pursuant to 1983 civil Act under title 42.")

9

state a claim under the equal protection clause, a plaintiff must allege that the defendant was "motivated by discriminatory purpose." *Chavez v. Ill. State Police,* 251 F.3d 612,645 (7th Cir. 2001). For the very same reasons discussed above, her discrimination claims fail under the 14th amendment.

Whether directly or indirectly, Herndon's ADA claims also require allegations of intentional discrimination. *Bekker v. Humana Health Plan, Inc.,* 229 F.3d 662, 670 (7th Cir. 2000).[6] Here again she fails to sufficiently allege intentional discrimination. Additionally, her claims fail at the threshold because she has not alleged that she suffers from any disability.

Whether under the ADA or the FHA, Herndon must include allegations that she is "disabled" under the meaning of the statute. *A.B. ex rel. Kehoe v. Hous. Auth. of South Bend,* No. 3:11-CV-163, 2012 WL 1877740 at *11 (N.D. Ind. May 18, 2012). An individual is disabled under the ADA and FHA when she: (1) has a mental or physical impairment that substantially limits a major life activity; (2) has a record of such impairment; or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 3602(h); 42 U.S.C. § 12102(3)(A). Taking all of the allegations as true and drawing all reasonable inferences in Herndon's favor, there is no indication that she suffers from a disability within the

---

[6] According to the Seventh Circuit, there are two methods for establishing discrimination based on disability. *Id.* "First the employee may present direct or circumstantial evidence that the employment decision was motivated by the employer's discriminatory animus. Second, the employee may use the burdern-shifting method . . . to prove by indirect evidence that her employer intentionally discriminated against her" *Id.*

meaning of these statutes. *see, Putignano v. Senior Lifestyle Corp.*, 116 F.3d 1482 (7th Cir. 1997) (affirming dismissal of ADA claim where *pro se* plaintiff failed to allege disability). Even if Herndon had sufficiently alleged a disability, she still has not made a plausible claim of any intentional discrimination on this basis. For these reasons, her claims under the ADA also fail.

### II. FHA Retaliation

Herndon also raises a claim of retaliation under Section 3617 of the FHA. Her claim is that defendants initiated the lease recertification process in order to retaliate against her for filing a discrimination complaint with the HRC. This in turn, led to her eviction after she failed to complete the process. She also alleges retaliation in the form of two unit inspections that were conducted in the weeks after her complaint and delayed repairs of her unit.

In order to prevail on a Section 3617 claim, Herndon must allege that: "(1) she is a protected individual under the FHA, (2) she engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Bloch*, 587 F.3d at 783. Put another way, Herndon can establish a *prima facie* case of FHA retaliation by showing that (1) she engaged in a protected activity; (2) defendants subjected her to an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Fincher v. South Bend Housing Authority*, 612 F. Supp. 2d 1009, 1024 (N. D. Ind. 2009)

(citing *Neudecker v. Boisclair Corp.,* 351 F.3d 361, 363-64 (8th Cir. 2003); *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001)).

Herndon's race discrimination complaint with the HRC is protected activity under the FHA. However, it is with the latter two elements that Herndon's claims fall short. In her favor, the sequence of events lines up such that her complaint precedes the recertification process and her eventual eviction within a span of three to four months. Under ordinary circumstances, suspicious timing alone rarely presents a triable issue on causation. *Carlson v. CSX Transp., Inc.* , 758 F.3d 819, 828 (7th Cir. 2014)(citing *Cung Hnin v. TOA (USA), LLC,* 751 F.3d499, 508 (7th Cir. 2014). However, under federal pleading standards, such allegations can be sufficient to "nudge a complaint from possible to plausible." *Cole v. Bd. of Trs. of N. Illinois Univ.,* 38 F.Supp. 925, 932 (N.D. Ill. 2014). The problem for Herndon's claims is that any causal link between her complaint with the Commission and her eviction is attenuated by her failure to complete the recertification process.

Annual recertification is required of all public housing tenants. 24 CFR §§ 966.4(c), 960.257. And failure to recertify is a lease violation that can result in termination of tenancy. 24 CFR §§ 966.4(c)(2), 966.4(l)(2)(I). Conclusory language aside, Herndon does not allege that the recertification process was initiated prematurely or was otherwise deployed in a punitive or prejudicial fashion. She provides no detail to suggest that the recertification process, three months after HRC complaint, was anything other than routine. For instance, when Herndon asked to reschedule her

appointment, HASB accommodated her request, and it was she who failed to complete the process.

Even assuming that recertification was initiated in direct response to the complaint, it is still unclear how that constitutes an adverse action. Unfortunately, that will remain unclear, as Herndon did not "submit to the required process and receive an adverse result." *Echemendia v. Gene B. Glick Mgmt. Corp.*, No. 1:05-CV-53, 2005 WL 3359108 *1 (N.D. Ind. Dec. 9, 2005) ("*Echemendia I*"). Given her failure to recertify, it is hardly suspicious that she would then receive a 30-day lease termination notice. *See* 24 CFR § 966.4(l)(2)(I); *Echemendia v. Gene B. Glick Mgmt. Corp.*, No. 1:05-CV-53, 2007 WL 869196 *11 (N.D. Ind. March 20, 2007) ("*Echemendia II*") (Eviction was a "predictable consequence" of failing to pay rent after refusing to complete recertification).

Likewise, the fact that her unit was inspected a total of two times after she filed a complaint does not support a claim for retaliation. Much like the annual recertification process, unit inspections are provided for by law. *Id.*; 2 CFR 966.4(I)-(j). One of the inspections resulted in a favorable evaluation while the other allegedly resulted in no evaluation at all. Likewise, her allegation regarding the failure to make repairs to her unit is both vague and contradictory. To begin with she does not provide any factual details regarding the nature of the repairs while in the same breath concedes that some repairs were completed shortly after she made the HRC complaint. Without more, these allegations do not amount to a pattern of "invidiously motivated" harassment that interfered with her use and enjoyment of her dwelling. *Bloch,* 587 F.3d at 783. As such,

13

Herndon has failed to make plausible allegations that defendants took adverse actions against her as a result of her complaint with the HRC. Therefore she fails to state a claim for retaliation under the FHA.

> III. *Executive Orders 11063, 12892 and 13217*

Herndon also claims that defendants violated executive orders 11063, 12892 and 13217. As a general matter, "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders." *Echemendia II,* 2007 WL 869196 at * 14, aff'd, 263 F. Appx. 479 (7th Cir. 2008) (quoting *Facchiano Constr. Co. v. U.S. Dept. of Labor,* 987 F.2d 206, 210 (3rd Cir. 1993)). "Only when executive orders have specific foundation in Congressional action are they judicially enforceable in private civil suits." *Id.* (quoting *Zhang v. Slattery*, 55 F.3d 732, 847-48 (2nd Cir. 1995)). Executive orders 11063, 12892 and 13217 do not create a private right of action to bring suit. *Id.* at * 15; *Thomas v. Butzen,* No. 04-C-5555, 2005 WL 2387676 at * 11 (N.D. Ill. Sept. 26, 2005) (Executive Orders 12892 and 11063); *Hecht v. Banhart,* 217 F.supp.2d 356, 360 (E.D.N.Y. 2002) (Executive Order 13217). Therefore these claims are also dismissed.

> IV. USHA Claim

Lastly, Herndon asserts that defendants violated the USHA by issuing a 30-day notice of lease termination. She asserts that the law requires a 90-day notice period. That is incorrect. Under the USHA, public housing agencies are required to give not less than 30-days written notice of lease termination. 42 U.S.C. 1437d(1)(4)(C). Defendants complied with this requirement. Therefore this claim also fails.

14

## IV. MISCELLANEOUS MATTERS

Herndon has filed a second Motion for Leave to Proceed *in forma pauperis*. (DE # 24.) The court has already granted such leave. (DE # 3.) Therefore the motion is denied as moot.

Herndon has also filed a motion to reconsider (DE # 39) Magistrate Judge Christopher A. Neuchterlein's order from March 16, 2016 (DE # 38). That order denied Herndon's request for an extension of the deadline to file an amended complaint. (DE # 36.) The motion was denied as moot because "no such deadline exist[ed] in this case." (DE # 38.) Rather it appears that Herndon inadvertently filed the motion in this case and she actually intended to file it in another case, specifically *Herndon v. Indiana Dep't of Child Servs.*, Case No. 3:15-cv-96-JTM-JEM. Herndon's motion to reconsider confirms that the initial motion was filed in the wrong case. (DE # 39). If she seeks such an extension in that case, her motion ought to be refiled in that case. There is no deadline to extend in this case and plaintiff presents no other basis to reconsider the Magistrate Judge's order. Therefore the motion to reconsider (DE # 39) is denied.

## V. CONCLUSION

For the foregoing reasons, the second motion for leave to proceed *in forma pauperis* (DE # 24) is **DENIED AS MOOT.** The motion to reconsider (DE # 39) is **DENIED**. Defendants's motion to dismiss (DE # 16) is **GRANTED.** The clerk is **DIRECTED TO ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendants Housing
> Authority of South Bend and Joanne Watford, and against

plaintiff Cynthia Herndon, who shall take nothing by way of her complaint.

**SO ORDERED**.

Date: May 20, 2016

                                                    <u>s/ James T. Moody</u>
                                                    JUDGE JAMES T. MOODY
                                                    UNITED STATES DISTRICT COURT